IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HUDSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EAGLEMARK SAVINGS BANK, ET AL. | : | NO. 10-6994 |

**MEMORANDUM**

Padova, J.                                              May 9, 2011

Plaintiff William Hudson brings this putative consumer class action, on his own behalf and on behalf of others similarly situated, against motorcycle finance companies Eaglemark Savings Bank ("Eaglemark") and Harley-Davidson Credit Corp. ("HDCC"). Plaintiff alleges that, in connection with HDCC's repossession and sale of his Harley-Davidson motorcycle, Defendants failed to provide him with proper notice of disposition of collateral as required by the Uniform Commercial Code ("UCC"), 13 Pa. Cons. Stat. §§ 1101-5118, 7101-9710. Currently before the Court is Defendants' Motion to Dismiss the Amended Complaint. For the reasons that follow, we grant the Motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Amended Complaint alleges the following facts. Plaintiff is a resident of Norristown, Pennsylvania. (Am. Compl. ¶ 4.) Defendants are Nevada corporations. (Id. ¶¶ 5, 7.) HDCC extends credit to consumers to purchase Harley-Davidson motorcycles. (Id. ¶ 12.) Eaglemark is a wholly-owned subsidiary of HDCC. (Id. ¶ 9.)

On June 30, 2007, Plaintiff purchased a new motorcycle from Smaltz's Harley-Davidson, Inc. ("Smaltz's"), a Harley-Davidson franchised dealer. (Id. ¶¶ 18-19.) Smaltz's arranged for on-site financing of the motorcycle through Eaglemark. (Id. ¶ 20.) Plaintiff signed a "Bill of Sale" listing Smaltz's as the seller and signed a "Promissory Note (Simple Interest) and Security Agreement" (the

"Promissory Note"), which listed Eaglemark as the lender. (Id. ¶ 21 & Exs. A & B.) The Promissory Note stated that, in the event of a repossession, "'lender will mail a written notice of sale to you no less than ten (10) and no more than twenty (20) days (depending on the state you reside in) before selling the vehicle.'" (Id. ¶ 36 (quoting Ex. B ¶ 15).) The Promissory Note also stated that, upon Eaglemark's receipt and funding of the contract, the contract would automatically be assigned to HDCC. (Id. ¶ 27 (citing Ex. B ¶ 21).) Eaglemark assigned the contract to HDCC shortly thereafter. (Id. ¶ 28.)

Over the next two years, Plaintiff made monthly payments to HDCC. (Id. ¶ 29.) However, in 2009, he fell behind in his payments. (Id. ¶ 30.) On October 6, 2009, HDCC repossessed Plaintiff's motorcycle and sent to Plaintiff, by certified mail, a "Notice of Our Plan to Sell Property" (the "Notice"). (Id. ¶¶ 31, 34 & Ex. C.) The Notice stated, among other things, that HDCC planned to sell Plaintiff's motorcycle "'at a private sale sometime after' October 16, 2009." (Id. ¶ 35 (quoting Ex. C).)

Plaintiff alleges in the Amended Complaint that Eaglemark and HDCC violated the UCC by failing to provide proper and reasonable post-repossession notification of disposition. Specifically, Plaintiff alleges that the Notice was deficient because it (1) provided only ten days notice of the sale of the motorcycle; (2) failed to advise Plaintiff that the proceeds of the sale of his motorcycle, minus the costs of the sale, would reduce the amount Plaintiff owed; (3) failed to advise Plaintiff that he could recover his motorcycle at any time before the sale by paying the full amount he owed (not just past due payments) plus expenses; (4) failed to state the telephone number that Plaintiff could call to learn the exact amount he would have to pay to recover his motorcycle; (5) failed to provide an itemized statement of the amount required to recover the motorcycle; (6) failed to state the address

2

of the place where the motorcycle was stored; and (7) failed to advise Plaintiff that any personal property left in the motorcycle would be held for 30 days from the date of the Notice.

II.  **LEGAL STANDARD**[1]

In reviewing a motion to dismiss, we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

III.  **DISCUSSION**

Because we have diversity jurisdiction over this case, we must apply state law. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 46 n.11 (3d Cir. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). The parties agree that Pennsylvania law applies. Under Pennsylvania law, "a secured party that disposes of collateral" upon a debtor's default must send to the debtor "a

---

[1]Although the Amended Complaint states Plaintiff's intention to pursue this case as a class action, the Amended Complaint makes factual allegations relating only to the repossession of Plaintiff's Harley-Davidson motorcycle. Accordingly, at this stage, we review the sufficiency of the Amended Complaint under the standards applicable to an ordinary motion to dismiss. See generally Henderson v. UPMC, --- F.3d ----, 2011 WL 1238031 (3d Cir. 2011).

3

reasonable authenticated notification of disposition." 13 Pa. Cons. Stat. § 9611(b). "The notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content." 13 Pa. Cons. Stat. § 9611 cmt. 2 (citing 13 Pa. Cons. Stat. §§ 9612-9614).

The Amended Complaint alleges that the Notice was unreasonable both because it was untimely and because it failed to include certain information and advisories that the UCC allegedly requires. Defendants have moved to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the Amended Complaint fails to state a claim upon which relief may be granted because the Notice, which is attached to the Amended Complaint, fully complied with the UCC. We first consider the timeliness of the Notice, and then turn to the reasonableness of its contents.

## A. The Timeliness of the Notice

Defendants argue that we should dismiss Plaintiff's claim that the Notice was untimely because the UCC requires only that a notice of disposition of collateral be sent within a reasonable time and the Amended Complaint does not state a plausible claim that the ten days notice provided in this case was unreasonable. In response, Plaintiff notes that the Pennsylvania Motor Vehicle Sale Financing Act ("MVSFA"), 69 P.S. §§ 601-637.1, requires that a lender provide fifteen days notice of its intent to sell a repossessed motor vehicle and contends that this time requirement applies in this UCC action. In the alternative, Plaintiff argues that whether the ten days notice provided in this case was reasonable is a question of fact that cannot be resolved on a motion to dismiss.

### 1. The MVSFA

The MVSFA provides, in pertinent part, as follows:

4

> When repossession of a motor vehicle, <u>which is the subject of an installment sale contract</u>, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written "notice of repossession" . . . . Such notice . . . shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice.

69 P.S. § 623(D) (emphasis added). The MVSFA defines "installment sale contract" as "any contract for the retail sale of a motor vehicle, or which has a similar purpose or effect under which part or all of the price is payable in two or more scheduled payments subsequent to the making of such contract." 69 P.S. § 603(10). The MVSFA defines "installment seller" as "a person engaged in the business of selling, hiring or leasing motor vehicles under installment sale contracts or any legal successor in interest to such person." 69 P.S. § 603(4).

Here, Plaintiff obtained a direct loan from Eaglemark and used the funds to purchase his motorcycle from Smaltz's. Smaltz's was not a party to the Promissory Note, and neither Eaglemark nor HDCC was a party to or assignee of the Bill of Sale. Thus, Plaintiff's contract with Eaglemark was not a "contract for the retail sale of a motor vehicle," and neither Eaglemark nor HDCC was "engaged in the business of selling, hiring or leasing motor vehicles." Accordingly, on its face, the MVSFA does not apply to Plaintiff's transaction with Eaglemark.

Plaintiff nevertheless argues that we should interpret the MVSFA to apply to his loan, because "this was a common case of dealer-arranged financing through a captive lender." (Pl. Surreply at 5.) The type of transaction to which Plaintiff refers is commonly known as a "dragging the body" loan. In a "dragging the body" loan, a motor vehicle dealer arranges for the customer to obtain financing through a legally separate lender with which the dealer has a pre-existing relationship. <u>See, e.g.</u>, <u>In re Barber</u>, 266 B.R. 309, 316-17 & n.9 (Bankr. E.D. Pa. 2001) (citations

5

omitted); Anderson v. Auto. Fund, 391 A.2d 642, 649 (Pa. Super. Ct. 1978) (Opinion of Spaeth, J., in support of reversal); see generally Robert T. Montague, Jr., "Dragging the Body"–Deceptive Automobile Financing in Pennsylvania: With Proposed Legislative Remedies, 34 U. Pitt. L. Rev. 429 (Spring 1973). Thus, the name is derived from the idea that the lender "drags the [customer's] body" to the preselected lender. Here, Smaltz's arranged for the financing of Plaintiff's motorcycle through Eaglemark and closed the loan at the dealership. Plaintiff therefore argues that we should find his loan to be a "dragging the body" loan, interpret the MVSFA to apply to such loans, and import the fifteen day notice requirement as the applicable standard of conduct in this UCC action.[2]

The Pennsylvania Supreme Court has never addressed the question of whether the MVSFA applies to "dragging the body" loans. Accordingly, "we must 'predict how the [Pennsylvania] Supreme Court would rule if presented with this case.'" Holmes v. Kimco Realty Corp., 598 F.3d 115, 118 (3d Cir. 2010) (quoting Repola v. Morbark Indus., Inc., 934 F.2d 483, 489 (3d Cir. 1991)). In making that prediction, we "must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law." Robinson v. Jiffy Exec. Limousine Co., 4 F.3d 237, 242 (3d Cir. 1993) (citations omitted). In the only state appellate decision to address the question at issue, an evenly-divided Superior Court affirmed a lower court decision holding that the MVSFA did not apply to a "dragging the body" transaction. Anderson, 391 A.2d 642.[3] Plaintiff

---

[2]Plaintiff also simply avers that Pennsylvania law requires fifteen days notice, and then argues that, at this stage, we must accept that averment as true. (See, e.g., Pl. Resp. at 5 (citing Am. Compl. ¶¶ 36, 43(a)).) However, the averment that Pennsylvania law requires fifteen days notice is a legal conclusion to which we owe no deference. See Iqbal, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[3]The three judges who voted in favor of reversing the lower court decision, and would have held that the MVSFA did apply to "dragging the body" loans, argued for collapsing the sale and loan

relies extensively on two Superior Court decisions in which the court applied the MVSFA's fifteen day notice requirement as the standard of conduct applicable in a UCC action alleging defective notice. However, both of those cases are inapposite because they involved installment sale contracts and, thus, fell within the MVSFA's explicit coverage. See Indus. Valley Bank & Trust Co. v. Nash, 502 A.2d 1254, 1255 (Pa. Super. Ct. 1985) ("[T]he Nashes executed a motor-vehicle installment sale contract . . . ."); Coy v. Ford Motor Credit Co., 618 A.2d 1024, 1025 (Pa. Super. Ct. 1993) ("Coy purchased a Ford truck . . . under a retail sales installment contract."). Plaintiff has cited no relevant state court precedent that supports the extension of the MVSFA's fifteen day notice requirement beyond installment sale contracts.

We also may look to state statutes for "legislative direction." Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 425 (E.D. Pa. 2010). In 1994, the Pennsylvania legislature enacted the Simplification and Availability of Bank Credit Act ("SABCA"), which "govern[s] all direct and indirect extensions of credit by an institution . . . to an

---

documents into a single transaction in order to bring it within the scope of the MVSFA. Anderson, 391 A.2d at 652. Writing in support of reversal, Judge Edmond B. Spaeth, Jr., emphasized that the purpose of the MVSFA was to protect consumers who, because of unequal bargaining power and legal technicalities, were "'at the mercy of unscrupulous persons and [were] being intolerably exploited in the installment purchase of motor vehicles.'" Id. at 651 (quoting 69 P.S. § 602). He expressed particular concern regarding the "common practice" in which a dealer would enter into an installment sales contract with a consumer and then sell the contract to a financial institution, which would then be insulated from any claims arising out of the condition of the automobile by the holder in due course doctrine. Id. at 651. Judge Spaeth argued that "dragging the body" transactions raise the same concern, because they allow the lender to retain holder in due course status. Id. at 652. Defendants here point out that, following Anderson, and in light of critical commentary about "dragging the body" transactions, the Federal Trade Commission ("FTC") adopted the FTC Holder Rule, which makes it an unfair practice for a motor vehicle dealer to accept proceeds from a purchase money lender to which it referred business unless the lender includes a clause in its loan contract stating that the buyer can raise against the lender "all claims and defenses which the [buyer] could assert against the seller." See 16 C.F.R. § 433.2. Thus, the adoption of the FTC Holder Rule substantially mitigated the policy concern that drove Judge Spaeth's opinion in Anderson.

7

individual," and which provides that "[a]n extension of credit to finance a sale of a motor vehicle . . . may be made by an institution through a seller licensed as an installment seller." 7 P.S. §§ 322(b), (i). A financial institution may therefore extend credit to a consumer for the purchase of a motor vehicle in a transaction arranged by a motor vehicle dealer that is itself licensed to extend credit to consumers in the form of installment sales contracts. Id. § 322(i). When it does so, the "extension of credit . . . [is] subject to [the SABCA] and other acts governing transactions between banks and their customers and [is not] subject to the provisions or requirements of any other regulatory statute, rule or regulation . . . ." Id. Thus, the financial institution's extension of credit to the consumer is not subject to the MVSFA. See 10 Pa. Code § 13.51(b)(4)(ii) ("[A]n institution financing the purchase of goods or services through the seller may elect, at its option, to structure the credit extension as a direct loan under the SABCA (or any other applicable provision of law) or as the purchase of an installment sale contract under the [MVSFA]").[4] The SABCA therefore supports Defendant's position that the transaction at issue in this case is not subject to the MVSFA.

For the foregoing reasons, we conclude that the MVSFA does not apply to the "dragging the body" transaction at issue here. See Joyce v. Fidelity Consumer Disc. Co., 41 B.R. 249, 253-54 (Bankr. E.D. Pa. 1984) (rejecting the argument that a bank was a "'seller' under an 'installment sales contract' for the 'retail sale' of a motor vehicle [where] the car dealership directed the debtor to [the

---

[4]The Pennsylvania Department of Banking issued this interpretive regulation pursuant to its authority to administer and enforce the MVSFA. See Pysh v. Sec. Pac. Hous. Serv., 610 A.2d 973, 978 (Pa. Super. Ct. 1992). As a general matter, the Department's interpretive regulations are "accorded substantial weight and are to be disregarded only where they are clearly inconsistent with the statute being construed." Id. at 978-79 (citation omitted). "Such regulations are accorded particular weight when they are issued by administrative agencies charged with administering complex areas, such as banking and finance, as to which the agency has particular expertise." Id. at 979 (citations omitted).

8

bank] for the financing of the vehicle" and concluding instead that "[t]he contract is merely a loan agreement" (footnote omitted)); see also Manning v. Princeton Consumer Disc. Co., Inc., 380 F. Supp. 116, 119 (E.D. Pa. 1974) (expressing "doubts whether the transaction by which plaintiff purchased her automobile falls within the MVSFA's definition of an installment sales contract" where the plaintiff argued that the defendants violated the MVSFA "by writing an installment purchase of consumer goods as if it were a cash sale and loan transaction" (footnote omitted)). We therefore reject Plaintiff's argument that the MVSFA provides the applicable standard of conduct in this UCC action. Accordingly, we grant the Motion to Dismiss insofar as it seeks dismissal of Plaintiff's claim that Defendants violated the UCC by failing to comply with the MVSFA's fifteen day notice requirement.

    2.  The UCC

  The Amended Complaint also alleges that, separate and apart from the standards set forth in the MVSFA, ten days notice was simply "unreasonable" under the UCC. As a general matter, "whether a notification is sent within a reasonable time is a question of fact." 13 Pa. Cons. Stat. § 9612(a). To assist with that factual determination, the comments to the UCC provide that "[a] notification that is sent so near to the disposition date that a notified person could not be expected to act on or take account of the notification would be unreasonable." 13 Pa. Cons. Stat. § 9612 cmt. 2. Here, Plaintiff alleges, without any elaboration, that ten days notice was unreasonable. Defendants argue that this allegation fails to state a claim upon which relief may be granted because it lacks any factual specificity.

  Indeed, a mere assertion that notice was unreasonable is insufficient to state a claim upon which relief may be granted. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 555, 557) (alteration in original)). In the absence of any factual allegations to support Plaintiff's claim that ten days notice was unreasonable in this case, e.g. facts suggesting that Plaintiff could not act on or take account of the notification in a ten day period, the bald assertion that the notice period was unreasonable is simply implausible. See also 35 Am. Jur. Proof of Facts 2d 517 § 8 (2010) (stating that "the number of days within which notice must be given to the debtor cannot be determined without considering the circumstances of the individual debtor, the relative locations of the parties, and such factors as the effect of holidays or weekends, when the banks may be closed, that may intervene between the sending of the notice and the time of sale"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. Id. (citing Twombly, 550 U.S. at 555).

In sum, we conclude that the Amended Complaint fails to aver facts sufficient to state a UCC claim upon which relief may be granted based on the lack of reasonable notice. Accordingly, we grant the Motion to Dismiss insofar as it seeks dismissal of the UCC untimeliness claim.

    B.    <u>The Contents of the Notice</u>

Defendants argue that we should dismiss Plaintiff's claim that the contents of the Notice were insufficient, asserting that the Notice fully complied with the UCC. The Amended Complaint alleges that the Notice was inadequate under the UCC because it failed (1) to advise Plaintiff that the proceeds of the sale of his motorcycle, minus the costs of the sale, would reduce the amount Plaintiff owed; (2) to advise Plaintiff that he could recover his motorcycle at any time before sale by paying the full amount he owed (not just past due payments) including expenses; (3) to state the

10

telephone number that Plaintiff could call to learn the exact amount he would have to pay to recover his motorcycle; (4) to provide an itemized statement of the amount required to redeem the vehicle; (5) to state the address of the place where the motorcycle was stored; and (6) to advise Plaintiff that any personal property left in the motorcycle would be held for 30 days from the date of the Notice.

The first three of these alleged deficiencies in the Notice concern information and advisories that must be included in a post-repossession notice of disposition under the UCC. The UCC requires that a notice of disposition of collateral contain "a description of any liability for a deficiency of the person to which the notification is sent." 13 Pa. Cons. Stat. § 9614(1)(ii). The UCC also includes a "form of notification," which "when completed, provides sufficient information." Id. § 9614(3). The form notice states that "[t]he money that we get from the sale (after paying our costs) will reduce the amount you owe," and that "[y]ou can get the property back at any time before we sell it by paying us the full amount you owe (not just past due payments), including our expenses." Id. Here, the Notice stated that "[t]he money that we get from the sale (after paying our costs) may reduce the amount you owe," and that "[t]o get the Collateral back you must pay off your loan, which includes but is not limited to the outstanding balance, plus interest and expenses . . . any time before the sale of the Collateral." (Am. Compl. Ex. C). Contrary to Plaintiff's assertions,[5] these provisions of the Notice are in full compliance with the UCC's requirements.

---

[5]Plaintiff takes issue with the Notice's use of the word "may," and emphasizes that the UCC model notice states instead that the proceeds of the sale, minus costs, "will" reduce the amount owed by the debtor. See 13 Pa. Cons. Stat. § 9614(3). However, "[a] particular phrasing of the notification is not required." Id. § 9614(2). Moreover, any imprecision in the use of the word "may" was rectified by the next two sentences of the Notice, which stated as follows:
> If we get less money than you owe, you will still owe us the difference. If we obtain more money that you owe at the sale, you will get the extra money, unless we must pay it to someone else.

(Am. Compl. Ex. C (emphases added).)

11

The UCC also requires that a notice of disposition include "a telephone number from which [information concerning] the amount which must be paid to the secured party to redeem the collateral . . . is available." 13 Pa. Cons. Stat. § 9614(1)(iii). Here, the Notice did include a telephone number that Plaintiff could call to learn the exact amount he would have to pay to recover his motorcycle. (See Am. Compl. Ex. C.) In fact, the Notice provided the telephone number four times. (See id.) Thus, with respect to the first three alleged deficiencies in the Notice, we conclude that the Notice was in full compliance with the requirements of the UCC.

The next three allegations of deficiencies in the Notice involve information and advisories that the UCC does not require be included in a notice of disposition of collateral. Plaintiff has cited no UCC provisions that require a notice to contain an itemized statement of the amount required to redeem the vehicle, the address of the place where the vehicle is stored, or an advisory that any personal property left in the motorcycle may be held for 30 days from the date of the Notice, and we are aware of no such provisions.[6]

Therefore, we conclude that the Amended Complaint does not state a plausible claim that the contents of the Notice were unreasonable under the UCC. Accordingly, we grant the Motion to Dismiss insofar as it seeks dismissal of Plaintiff's claims relating to the contents of the Notice.

---

[6]The MVSFA requires such information and advisories, 69 P.S. § 623(D), but, as explained above, the MVSFA does not apply to the "dragging the body" transaction at issue here.

## IV. CONCLUSION

For the foregoing reasons, we grant the Motion to Dismiss in its entirety. An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
_____
John R. Padova, J.